UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIANNE LOUIE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARMING MEDICAL, LIMITED; KIT WONG; CHING MAN CHEUNG; JOSEPHINE YAN YEUNG; LEUT MING GUNG; SHU TAI VICTOR YU; CATHAY SECURITIES INC.; WWC, P.C.; and COGENCY GLOBAL, INC.,<br><br>Defendants. | Case No.  1:25-cv-10535-JPO |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF THE MOTION OF THE CHARMING INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 5

   I.    THE COURT SHOULD APPOINT THE CHARMING INVESTOR
         GROUP AS LEAD PLAINTIFF ............................................................... 5

         A.   The Charming Investor Group Has the Largest Financial
              Interest of Any Competing Movant .............................................. 5

         B.   The Charming Investor Group Satisfies the Applicable
              Requirements of Rule 23 ............................................................... 6

   II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
         BE APPROVED ....................................................................................... 10

   III.  THE COURT SHOULD DENY THE COMPETING MOTIONS ....................... 11

CONCLUSION ................................................................................................................ 11

CERTIFICATE OF WORD COUNT ........................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...............................5, 6

*Barnet v. Elan Corp., PLC.*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...................................................................................3, 8

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT)(SN) et al., 2018 WL 3093965
(S.D.N.Y. June 21, 2018)...............................................................................................1, 5

*China Agritech, Inc. v. Resh*,
584 U.S. 732 (2018)........................................................................................................3, 8

*Dookeran v. Xunlei Ltd.*,
Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................3, 7

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .................................................................................3, 5, 7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).....................4, 8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...............................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..........................5

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)...............................................................................................3

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ...............................................................................................8

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) .........................................................................................10

*Johnston v. LifeMD, Inc.*,
No. 25 Civ. 09153 (NRB), 2025 WL 3268886 (S.D.N.Y. Nov. 24, 2025) ..........................6, 7

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................5, 6

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
　311 F.R.D. 373 (S.D.N.Y. 2015) ..................................................................................10

*Li v. Spirit AeroSystems Holdings, Inc.*,
　No. 23 Civ. 3722 (PAE), 2023 WL 6938285 (S.D.N.Y. Oct. 20, 2023) ..........................3, 6, 7

*Lian v. Tuya Inc.*,
　No. 22 Civ. 6792 (JPC), 2022 WL 17850134 (S.D.N.Y. Dec. 22, 2022) ................................4

*Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
　No. 2:11-cv-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ..................................................8

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
　No. 17-CV-06130 (LTS)(SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........................5

*Pack v. LuxUrban Hotels Inc.*,
　No. 24 Civ. 1030 (PAE), 2024 WL 3046258 (S.D.N.Y. June 18, 2024)...................................9

*Peters v. Jinkosolar Holding Co., Ltd.*,
　No. 11 Civ. 7133 (JPO), 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ..................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
　589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................................10

*Weltz v. Lee*,
　199 F.R.D. 129 (S.D.N.Y. 2001) ..........................................................................................4, 8

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
　No. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014).......................................................8

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 ................................................................. *passim*

Securities Exchange Act of 1934 ...........................................................................................5, 7

**Rules**

Fed. R. Civ. P. 23.................................................................................................... *passim*

Lead Plaintiff Movant the Charming Investor Group[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 33); and in opposition to the competing motion of Darryl Futch, Vinayagamoorthy Kaliyappan, and Sreekanth Kanala (collectively, the "Futch Group") (Dkt. No. 26).[2]

## PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Charming securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the largest financial interest in the outcome of the Action that satisfies the relevant requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, that movant is the Charming Investor Group.

First, the Charming Investor Group has the largest financial interest under any relevant metric.  Although the PSLRA does not define "financial interest," courts in the Second Circuit, including this District, routinely assess financial interest with reference to the four so-called *Lax* factors: (1) number of shares purchased; (2) net number of shares purchased; (3) net funds expended; and (4) net loss suffered.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN) et al., 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018).  Here, the Charming Investor

---

[1] All capitalized terms herein are defined in the Charming Investor Group's moving brief, unless otherwise indicated.  *See* Dkt. No. 35.

[2] Initially, several other putative Class members—Charles Dunbar ("Dunbar"); Jonathan Bregman ("Bregman"); I-Yin Chen ("Chen"); Ridgely Robson ("Robson"); and Jesse Barlow, Joe Cameron, and Kyle Kelly (collectively, the "Barlow Group")—filed similar competing motions.  *See* Dkt. Nos. 16 (Dunbar), 19 (Bregman), 22 (Chen), 29 (Robson), 32 (Barlow Group).  On March 3, 2026, Chen, Robson, the Barlow Group, and Bregman each filed notices of non-opposition to the competing motions.  *See* Dkt. Nos. 38 (Chen), 39 (Robson), 41 (Barlow Group), 42 (Bregman). Also on March 3, 2026, Dunbar withdrew his motion.  *See* Dkt. No. 40.

1

Group's financial interest exceeds those of the competing movants across all four *Lax* factors.  The table below sets forth the respective financial interests of the Charming Investor Group and the competing movant:

| Movant | Shares Purchased / Acquired | Net Shares Purchased / Acquired | Net Funds Expended | Loss (LIFO)[3] |
|---|---|---|---|---|
| Charming Investor Group | 55,856 | 55,856 | $1,553,634 | $1,553,634 |
| *Grant Albert* | 27,500 | 27,500 | $759,748 | $759,748 |
| *James McKnight* | 17,956 | 17,956 | $495,823 | $495,823 |
| *Bernard Whelan* | 10,400 | 10,400 | $298,064 | $298,064 |
| Futch Group | 28,915 | 28,915 | $828,023 | $828,023 |
| *Vinayagamoorthy Kaliyappan* | 19,565 | 19,565 | $558,972 | $558,972 |
| *Daryll Futch* | 5,500 | 5,500 | $158,950 | $158,950 |
| *Sreekanth Kanala* | 3,850 | 3,850 | $110,101 | $110,101 |

As the Charming Investor Group leads the competing movants with respect to financial interest under any relevant metric—with one individual member of the group, Albert, having a larger financial interest under all metrics than any competing individual movant—it cannot reasonably be disputed that the group has alleged the largest financial interest in this Action and thus satisfies the first of the PSLRA's "most adequate plaintiff" criteria, thus entitling them to the PSLRA's rebuttable presumption.

---

[3] Because trading on Charming common stock on the NASDAQ was suspended indefinitely on November 11, 2025—and, as of the time of this submission, remains suspended—the Charming Investor Group did not allege a specific investment loss figure in its opening brief, but opted instead to express its financial interest with reference only to the first three *Lax* factors (*i.e.*, (1) shares purchased, (2) net shares purchased, and (3) net funds expended).  *See* Dkt. Nos. 35 at *7–8; 37-2 at *2.  To facilitate an apples-to-apples financial interest comparison relative to the other competing movants, the Charming Investor Group's counsel has calculated its investment losses consistent with the methodology employed by each of the six competing movants (*see* Dkt. Nos. 18-3 at *2 (Dunbar); 21-2 at *2 (Bregman); 25-4 at *2 (Chen); 28-2 at *2 (Futch Group); 30 at *7, 11 (Robson); 31-2 at *2; (same) 36-3 at *2 (Barlow Group)), which values all currently held shares of Charming stock at $0.00.

In addition to its considerable financial interest, the Charming Investor Group readily satisfies Rule 23's typicality and adequacy requirements. The group's claims in this Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Li v. Spirit AeroSystems Holdings, Inc.*, No. 23 Civ. 3722 (PAE), 2023 WL 6938285, at *2 (S.D.N.Y. Oct. 20, 2023); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). In addition, the Charming Investor Group's significant losses give it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, the group is aware of no conflict between its interests and those of the Class, and, as discussed in greater detail below, in Pomerantz, the group has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348, at *2–3 (S.D.N.Y. Apr. 12, 2018).

Moreover, the Charming Investor Group is a small and cohesive group of likeminded investors, consisting of (i) Albert, (ii) McKnight, and (iii) Whelan—each of whom incurred significant losses as a result of the alleged fraud. *See* Dkt. No. 37-5 ¶¶ 2–4. Accordingly, the Charming Investor Group is exactly the kind of group that the PSLRA expressly permits, and that courts in the Second Circuit routinely appoint to serve as co-lead plaintiffs in securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (directing courts to appoint as lead plaintiff "the person ***or group of persons*** that" satisfies the PSLRA's relevant criteria (emphasis added)); *China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups[.]"); *Barnet v. Elan Corp., PLC.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and

appointing group consisting of six members with the largest financial interest as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff").

Further demonstrating its adequacy, the Charming Investor Group has submitted with its motion papers a detailed Joint Declaration, attesting to, *inter alia*, its members' respective backgrounds and investing experience, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, a meaningful explanation of their reasons for seeking appointment jointly as co-lead plaintiffs, and their readiness to collaboratively shoulder the responsibilities of lead plaintiffs under the PSLRA, including by overseeing the efforts of counsel. *See generally* Dkt. No. 37-5. Courts routinely appoint investor groups as lead plaintiff pursuant to the PSLRA under such circumstances. *See, e.g.*, *Lian v. Tuya Inc.*, No. 22 Civ. 6792 (JPC), 2022 WL 17850134, at *4 (S.D.N.Y. Dec. 22, 2022) (appointing group that submitted a declaration "detail[ing] their relationship and plans for managing this litigation"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4–5 (E.D.N.Y. Dec. 15, 2017) (appointing group that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class").

For the reasons set forth herein, the Charming Investor Group respectfully submits that the Court should grant its motion in its entirety and deny the competing motions.

4

**ARGUMENT**

**I.    THE COURT SHOULD APPOINT THE CHARMING INVESTOR GROUP AS LEAD PLAINTIFF**

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at \*3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon "***proof***" that the presumptive lead plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  Here, the most adequate class representative is the Charming Investor Group.

**A.    The Charming Investor Group Has the Largest Financial Interest of Any Competing Movant**

The Charming Investor Group indisputably satisfies the PSLRA's first criterion for the "most adequate plaintiff" presumption because they have the largest financial interest in this litigation.  For claims arising under Exchange Act § 10(b), courts in this District and the Second Circuit generally assess financial interest with reference to the four *Lax* factors: (1) number of shares purchased; (2) net number of shares purchased; (3) net funds expended; and (4) net loss suffered.  *See, e.g.*, *Foley*, 272 F.R.D. at 127–28; *Chahal*, 2018 WL 3093965, at \*1; *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at \*1 (S.D.N.Y. Nov. 13, 2017); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at \*3 (E.D.N.Y. Mar. 2, 2007).

Under any of the foregoing metrics, the Charming Investor Group clearly has the largest financial interest in this litigation among the competing movants.  As the chart at p. 2 illustrates, during the Class Period, the Charming Investor Group's members: (1) purchased 55,856 shares of Charming stock; (2) purchased 55,856 net shares of Charming Stock; (3) expended $1.553,634 in net funds on those purchases; and (4) suffered investment losses of ***over $1.55 million*** in connection with their Class Period transactions in Charming securities—by any and all metrics, significantly more than any competing movant.  *See* Dkt. No. 37-2 at *2.  Likewise, one member of the group, Albert, claims a larger financial interest individually than any other individual movant: (1) 27,500 shares purchased; (2) 27,500 net shares purchased; (3) $759,748 in funds expended; and (4) $759,748 in investment losses.  *See id.*  Accordingly, the Charming Investor Group possesses the largest financial interest in this litigation within the meaning of the PSLRA of any movant seeking appointment as Lead Plaintiff.

**B.    The Charming Investor Group Satisfies the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of this litigation, the Charming Investor Group has plainly made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23.  *Aude*, 2018 WL 1634872, at *3 ("The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements."); *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of litigation, only a preliminary showing of typicality and adequacy is required.").

The Charming Investor Group satisfies the typicality requirement of Rule 23(a)(3) because its claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Li*, 2023 WL 6938285, at *2; *Johnston v. LifeMD, Inc.*, No. 25 Civ.

6

09153 (NRB), 2025 WL 3268886, at *2 (S.D.N.Y. Nov. 24, 2025).  The Charming Investor Group alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Charming, or by omitting to state material facts necessary to make the statements they did make not misleading.  In addition, the members of the Charming Investor Group, like other Class members, purchased Charming securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Charming's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).  *See Li*, 2023 WL 6938285, at *2; *Johnston*, 2025 WL 3268886, at *2.

The Charming Investor Group likewise satisfies the adequacy requirement of Rule 23(a)(4) because its significant losses incurred as a result of the Defendants' alleged fraud gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, the group is aware of no conflict between its interests and those of the Class, and, as discussed in greater detail below, in Pomerantz, the group has selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class.  *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2–3.

Moreover, as a small and cohesive group of likeminded investors, the Charming Investor Group constitutes an appropriate movant group of the type expressly permitted by the PSLRA and routinely appointed to serve as Lead Plaintiff in PSLRA actions, including in the Second Circuit, this District specifically, and around the country.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii) (directing courts to appoint as lead plaintiff "the person ***or group of persons*** that" satisfies the PSLRA's

7

criteria (emphasis added)); *Weltz*, 199 F.R.D. at 133 ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff"); *Elan*, 236 F.R.D. at 161–63 (holding "there can be no doubt" the PSLRA permits appointment of groups and appointing group of six as lead plaintiff, finding "six members is not too unwieldy a number to effectively manage the litigation"); *Blue Apron*, 2017 WL 6403513, at *4 (finding group of four unrelated investors is not "so large as to be unwieldly and impracticable" and appointing said group as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).  Indeed, in *China Agritech*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups[.]"  584 U.S. at 742 n.3.  More recently, in *In re Mersho*, the U.S. Court of Appeals for the Ninth Circuit likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment[.]"  6 F.4th 891, 899 (9th Cir. 2021).

Further, courts in the Second Circuit, including in this District, and around the country routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via a detailed Joint Declaration.  *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors who submitted a declaration attesting that the group "is prepared to work cooperatively to serve the best interests of the class"); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 WL 1395059, at *7–8, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage

the litigation"). Here, the Charming Investor Group has submitted a detailed Joint Declaration in which its members, *inter alia*:

- Provide detailed information about themselves, including their educational and professional backgrounds, ages, investment experience, and the fact that they all reside in Sweden (*see* Dkt. No. 37-5 ¶¶ 2–4);

- Explain their reasons for seeking appointment jointly as co-lead plaintiffs (*id.* ¶ 10) ("We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experience*** by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations pleaded in the complaint, and consulting with each other and our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and experience, as well as our ability to engage in joint decision-making, will materially benefit and advance the interests of the Class*** in this case." (emphases added));

- Attest in detail to their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to undertake those responsibilities (*id.* ¶¶ 5–8, 12–14); and

- Attest to their communication with one another prior to the filing of their motion (see *id.* ¶ 5) ("We have discussed this case ***with each other*** and an attorney from Pomerantz. . . . We participated in a conference call ***with each other*** and an attorney from Pomerantz to discuss this litigation, have one another's contact information, and approved the filing of a motion on our behalves seeking appointment jointly as Co-Lead Plaintiffs." (emphases added)).

Further weighing in favor of the Charming Investor Group's appointment is the fact that one member of the group, Albert, individually claims a larger financial interest than any other individual movant. Courts often appoint investor groups that include the individual movant with the largest financial interest, as such circumstances mitigate concerns about groupings driven purely for the purposes of financial-interest aggregation. *See*, *e.g.*, *Pack v. LuxUrban Hotels Inc.*, No. 24 Civ. 1030 (PAE), 2024 WL 3046258, at *4 (S.D.N.Y. June 18, 2024) (finding there was "no suggestion that the [appointed] group was formed to box out an outside candidate for lead plaintiff" where the movant group included the individual with losses "highest among all

9

movants"); *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *9 (S.D.N.Y. Mar. 19, 2012) ("[W]here the group comprises the class members with . . . the largest financial interest of any individual or group (that has otherwise come forward), then the policy [behind the PSLRA] is not disserved by allowing those individuals to join together.").

\* \* \* \*

Because the Charming Investor Group has the largest financial interest in the relief sought by the Class among those seeking appointment as Lead Plaintiff, and otherwise satisfies the applicable requirements of Rule 23, it is the presumptive "most adequate plaintiff" within the meaning of the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  To overcome the strong presumption entitling the Charming Investor Group to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that it is inadequate.  *Id.* § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class".  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

10

Here, the Charming Investor Group has selected and retained Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 37-6.  Thus, the Court may be assured that by approving the Charming Investor Group's selection of counsel, the members of the Class will receive the best legal representation available.

### III.    THE COURT SHOULD DENY THE COMPETING MOTIONS

As discussed further in Section I.A., *supra*, no competing movant seeking appointment as Lead Plaintiff claims a larger financial interest in this Action than the Charming Investor Group. This fact alone mandates denial of the competing motions.

### CONCLUSION

For the foregoing reasons, the Charming Investor Group respectfully requests that the Court issue an Order: (1) appointing the Charming Investor Group as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz as Lead Counsel for the Class.

Dated:  March 3, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com

*Counsel for the Charming Investor Group*
*and Proposed Lead Counsel for the Class*

11

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Grant Albert and James McKnight*

12

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for the Charming Investor Group, certifies that this brief contains 3,435 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on March 3, 2026.

/s/ J. Alexander Hood II
J. Alexander Hood II

13